Jason Wayne **BAKER**, Petitioner–Appellant,

v.

Cara C. (Baker) **GONZALEZ**, Respondent–Respondent,

and

Debra L. Baker, Intervenor.

No. SD 29873.

Missouri Court of Appeals, Southern District, Division Two.

July 23, 2010.

Devin S. Kirby, The Kirby Law Firm, P.C., Doniphan, MO, for Appellant.

Daniel T. Moore, Moore, Walsh & Albright, Poplar Bluff, MO, for Respondent.

Michael Hackworth, Piedmont, MO, for Intervenor.

Amy Galloway, Poplar Bluff, MO, for Guardian Ad Litem.

GARY W. LYNCH, Presiding Judge.

Jason Wayne Baker ("Father") appeals the trial court's judgment modifying a custody order in a dissolution of marriage action between Father and Cara C. Gonzalez ("Mother"). Father raises four issues on appeal, contending that the motion court erred: (1) in basing its decision to modify on section 452.400.2(2)(a), because Father has never pleaded guilty to, or been found guilty of, a crime under sections 566.030–566.215; (2) in allowing Mother to present evidence that Father engaged in sexual intercourse with a sixteen-year-old girl because such evidence is irrelevant; (3) in modifying the custody arrangement because Mother failed to demonstrate a substantial and continuing change of circumstances and that the modification was in the child's best interest; and (4) in modifying the custody arrangement because Mother did not establish that Father's behavior would endanger the child's physical health or would impair his emotional development. Finding each point adverse to Father, we affirm the judgment.

***Factual and Procedural Background***

Viewed in the light most favorable to the trial court's judgment, *Suffian v. Usher,* 19 S.W.3d 130, 136 (Mo. banc 2000), the following was adduced at trial.

Father and Mother were divorced by a Decree of Dissolution of Marriage filed on December 2, 2005. In that decree, Father and Mother were awarded joint legal and physical custody of their minor son, C.J.B. ("Child"), who was born on June 29, 2004. Father had physical custody of Child every other Wednesday through Sunday; he also had custody for six weeks during the summer and for alternating holidays. At the time of the dissolution, and still today, Father also has custody of two sons from a previous relationship.

In late May 2007, during the Memorial Day weekend, Father invited his exgirlfriend [1] and her sixteen-year-old daughter ("the minor girl") to accompany him and his three sons camping at Rain Island on the Current River. The romantic relationship between Father and his ex-girlfriend had ended in late 2006. At the time of this camping trip, Child was almost three years old, and Father's two older sons were approximately six and seven. Father, Child, Father's ex-girlfriend, and the minor girl

---

1. We do not refer to the ex-girlfriend and her daughter by their names to protect the identity of the daughter, who was a minor at the time of the events described in this opinion.

drove to the river on Friday evening, parked along the banks, and Father took everyone to the island in his boat. Shortly thereafter, Father's ex-girlfriend left, at Father's request, to pick up Father's two older boys. When she returned, they set up two tents: one for Father's ex-girlfriend and the minor girl, and one for Father and his sons.

While Father's ex-girlfriend was picking up the two older boys, the minor girl told Father she had a headache, and he gave her a pill. They then went down to the river "to go hang out with everybody[.]" The pill made the minor girl feel "really loopy[.]" After giving her the pill, Father rubbed her back.

The next morning, the campsite was empty except for Father, his three sons, his ex-girlfriend, and the minor girl. Father asked his ex-girlfriend to move her truck, because "somebody might mess with it[.]" Father ferried her back to the mainland in his boat and told her where to park her truck; he said he would meet her there. When she arrived at the new parking spot, Father was not there, and she waited ten or fifteen minutes before he showed up. She was gone a total of twenty to thirty minutes. At the time, Father's ex-girlfriend was unaware of anything taking place between Father and the minor girl.

After Father dropped off his ex-girlfriend, rather than proceeding to the new parking spot, he returned to the campsite. About the time of Father's return, the minor girl left the central area and went to her and her mother's tent, where she lay down on her stomach on her mother's air mattress to read a magazine. Father asked if he could come into the tent, but she replied, "[N]o, I'm changing." The next thing she knew, Father was inside the tent.

Father began rubbing the minor girl's back, persisting when she told him to stop. Father removed her clothes, and the minor girl "went into total shock." Father then had both oral sex and intercourse with her before "pulling out and like coming on [her] stomach." Father did not use a condom. Father asked the minor girl "if [she] wanted to get off," and she told him, "No. Get out of my tent." Father used the minor girl's shirt to wipe off her stomach and then left, while she remained inside the tent. Throughout the ordeal, Father's three sons were playing and swimming in the river without supervision. When Father's ex-girlfriend returned to the campsite, the minor girl told her, "We need to leave now."

Shortly after the camping trip, Father's ex-girlfriend asked the minor girl to deliver a birthday cake to Father. After dropping off the cake, and while she was preparing to leave Father's house, Father asked the minor girl if she was embarrassed about what had happened. When she replied, "Yes [,]" Father told her "that it was never going to happen again, he was really sorry about what had happened[,] and he hoped that it did not affect [their] friendship."

In late February or early March 2008, Father called his ex-girlfriend. She told Father that just that morning, while at church, the minor girl began crying for no discernable reason, but she would not tell anyone what was wrong. Father responded that he needed to tell her something, but he wanted her to come to his house first. When she refused, Father told her "that he had sex with [her] daughter." Father went on to tell her that the incident took place over Memorial Day weekend the year before, in the tent while she was moving the truck. At that point, his ex-girlfriend called her best friend, as well as the father of the minor girl, told them

what had happened, and the three of them sat down with the minor girl to talk about it.

A couple of weeks later, Father went to his ex-girlfriend's house, and again told her that he had had sex with the minor girl. Father also told his ex-girlfriend that the minor girl "wanted it and that she came on to him." This time, Father's ex-girlfriend recorded their conversation. She was unsure about what to do with the recording, so she asked the minor girl's father, who determined that they should turn the tape over to Steve Roberts, a sergeant with the Missouri State Water Patrol.

Father was arrested and charged by the Shannon County prosecuting attorney with statutory rape in the second degree, pursuant to section 566.034, and statutory sodomy in the second degree, pursuant to section 566.064. When Mother learned of his arrest and the nature—and timing—of the charges, she immediately stopped allowing Father unsupervised visitation with Child; she did, however, continue to allow Father to see Child while supervised, as well as allow frequent phone contact between them. Mother also invited Child's two half-brothers to stay and to visit with Child—a standing invitation—but Father has not allowed such a visit to take place.

Mother filed a motion to modify the dissolution decree on March 17, 2008, seeking sole legal and physical custody of Child as a result of Father's actions. Mother also requested that Father's visitation with Child be supervised.

On October 10, 2008, as a result of Mother's continued insistence on supervised visitation, Father filed a countermotion to modify seeking additional time with Child. Father also filed a family access motion on that date, requesting that the motion court compel Mother to comply with the original custody arrangement. On December 12, 2008, Father filed a second such motion. Shortly thereafter, Mother moved to dismiss Father's motions because he was requesting affirmative relief. She argued that Father was precluded from requesting such relief because he asserted his Fifth Amendment privilege against self-incrimination during his deposition, refusing to answer any questions regarding the allegations set forth in Mother's motion to modify.

At some point between Father's deposition and the hearing on the pending motions in this case, the criminal charges against Father relating to his sexual conduct with the minor girl were dismissed.

A trial was held on all pending matters in this case on February 3, 2009. Father's deposition was entered into evidence, during which he asserted his Fifth Amendment privilege against self-incrimination over forty-five times. The motion court took Mother's motion to dismiss under advisement, and proceeded with the hearing. Before any evidence was presented, Father requested "findings of fact, conclusions of law" from the trial court. Father provided the trial court with no further specificity regarding his request. *See* Rule 73.01(c).[2]

During the trial, Mother testified that, in addition to Father's actions outlined *supra*, she also believed Father to have drug and alcohol addictions. She stated that on numerous occasions, when she was picking up Child or dropping off Child from or for a visit with Father, she saw "a cooler full of beer in the back of his truck[,]" and empty beer cans scattered throughout Father's vehicle; she further stated that Father "would make it a point" to show her the cooler. Mother also testified that Fa-

2. All rule references are to Missouri Court Rules (2010).

ther's speech was often slurred, both on the phone and in person, and that "just by looking at his eyes you could tell he was under the influence of something." Mother often smelled beer on Father's breath. On more than one occasion, Mother called the Fredericktown police to report Father driving while intoxicated, but the police were unable to locate him. Mother stated that whenever she picked up Child from a visit with Father, Child was "filthy[.]" Additionally, Mother stated that Father would become forgetful, not remembering whether he had already spoken to Child on a particular day. Mother stated that Father "made a joke of" his having had sex with the minor girl, and would refuse to talk about where Child was during that sexual encounter. Finally, Mother testified that from the time she became aware of the allegations against Father, she limited Father's visitation with Child to visits supervised by herself or a member of her family; although much less frequently than before, Mother testified that Child saw Father at least once a month, usually more than that. She also stated that Child talked to Father every night on the telephone and that she repeatedly asked for Father's other two sons—Child's half-brothers—to come stay at her house to see Child, but Father refused to allow them to visit.

Father did not testify during the trial. According to Father in his deposition admitted into evidence, he was prevented from engaging in gainful employment due to back problems, for which he began drawing Social Security disability benefits some time during the latter part of 2006. Also, according to Father, his back "injury" made it difficult for him to sit for extended periods as his right leg goes to sleep, causes him to have bad days where he ends up laying flat a lot, and only "sometimes" allows him to operate a motor vehicle or get out on the river with a boat.

Father's deposition testimony also disclosed that during the time period after his divorce from Mother in 2005 through December 30, 2008, the date of his deposition, he had taken various pain medications, including Flexeril, Lorcet, Morphine, Percocet, Oxycontin, Norco, and Hydrocodone. According to Father, these medications would "sometimes" affect his ability to speak or carry on a conversation. During that time period, he also admitted in his deposition to drinking beer on a "weekly" basis and consuming alcohol in his house in Child's presence.

When asked during his deposition whether Child was with him on the river on Memorial Day weekend in 2007 and what Father did in Child's presence during that weekend, Father asserted his Fifth Amendment privilege against self-incrimination. Father admitted, however, that when Mother confronted him about the events of that weekend, as related to Father's supervision of Child, he would not discuss the matter with her.

On May 7, 2009, the trial court entered its Second Judgment of Modification. In that judgment, the trial court denied Father's motions; sustained Mother's motion to modify; awarded Mother sole legal and physical custody, with certain exceptions to allow Father access to Child's medical and educational records; granted Father supervised visitation according to a specific schedule; ordered Father not to consume any alcohol or illegal drugs from 24 hours prior to the start of a visit through the termination of the visit; and ordered Father to participate in counseling and complete a parenting skills course.

This appeal timely followed.

### Discussion

Father raises four points on appeal, which we address in the order presented.

*Trial Court Did Not Apply Section 452.400.2(2)(a)[3] to Mandate Supervised Visitation*

In his first point, Father asserts that

[t]he trial court erred by using RSMo. § 452.400.2(2)(a) as a basis to modify a previous custody order such that [Father] only has supervised visitation of his minor son because the statute was inapplicable in that [Father] never pled guilty to, nor was found guilty of, a crime under RSMo. § 566.030– § 566.215.

As best we can discern Father's point, he contends that the trial court erroneously applied section 452.400.2 to require that Father's visitation with Child be supervised.

■■■ "In matters pertaining to visitation rights this court gives deference to the trial court's assessment of what serves the best interest of the child. Judgment should be reversed only if it lacks substantial evidence to support it, if it is against the weight of the evidence, or if it erroneously declares or applies the law." *Kovacs v. Kovacs*, 869 S.W.2d 789, 793 (Mo.App. 1994).

■■ Section 452.400.1(1) provides, in part, that "[a] parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger the child's physical health or impair his or her emotional development." This "'endangerment-impairment standard'" applies to an order for supervised visitation. *Buschardt v. Jones*, 998 S.W.2d 791, 799 (Mo. App.1999) (quoting *R.W.H. v. D.M.H.*, 898 S.W.2d 144, 148 (Mo.App.1995)). Here, the trial court explicitly found that "Father's unsupervised visitation with [Child] would endanger [Child's] physical health and would impair his emotional development." Notwithstanding this finding, Father in this point contends that the trial court erroneously applied section 452.400.2(2)(a) to mandate that Father's visitation be supervised.

Father points out that, although the statutory rape and sodomy charges against him had been dismissed, the trial court specifically found "that Father committed the charged crimes of statutory rape and statutory sodomy on Memorial Day weekend of 2007 while the minor child born to the parties was solely in Father's care." In addition, he points out that the trial court also found that, "[b]y committing these crimes, Father exhibited inexcusably poor judgment and demonstrated a lack of true regard for all children and their right to be safe and protected." Finally, Father directs us to the trial court's finding that:

[a]lthough Father has not been found guilty or pled guilty in a criminal court, this Court has found Father violated section 566.064, RSMo. By enacting RSMo § 452.400.2(2)(a), the legislature has clearly demonstrated its intent to protect children from persons committing the act of statutory sodomy in the second degree. The legislature has found such a person is a danger to a child's physical health or would impair a child's emotional development. No other conclusion can be drawn.

---

**3.** Section 452.400.2(2)(a) provides:
In any proceeding modifying visitation rights, the court shall not grant unsupervised visitation to a parent if the parent or any person residing with such parent has been found guilty of or pled guilty to any of the following offenses when a child was the victim:

a. A felony violation of section . . . 566.064 . . .
We note that the same mandate, with almost identical language, is contained in sections 452.375.3(1) and 452.400.1(2)(a).

From these selected statements from the judgment, Father presumes in his argument that the trial court applied the statutory mandate in the referenced statute to require supervised visitation. Father then argues that the trial court's application of this statute was error because he was never found guilty of or pleaded guilty to any of the listed offenses.

■ When the trial court's judgment is read in its entirety, however, it is clear that the trial court properly relied upon the endangerment-impairment standard in section 452.400.1(1) in ordering supervised visitation and did not apply section 452.400.2(2) as mandating supervised visitation. In addition to the explicit finding of endangerment and impairment, as previously mentioned, the trial court made a finding that "no adult attended to, watched or supervised [Child] in or near the Current River during the time Father was in the tent with [the minor girl]."

Moreover, the trial court made extensive findings related to Father's impaired condition while having Child in his custody, which included slurred speech, odor of alcohol on his breath, and that "Father has inappropriately consumed alcoholic beverages during the time he exercised physical custody of [Child] or near the time he was to exercise physical custody." In the very next paragraph the trial court found that "[t]he circumstances of this case seriously call into question Father's mental health." The trial court was obviously concerned about Father's sobriety, as evidenced by its order that "[F]ather shall not consume any alcoholic beverages or use any illegal drugs during a period of time commencing twenty-four (24) hours prior to any visitation period with [Child] and terminating at the end of said visitation period."

The findings regarding Father's failure to properly supervise Child and his repeated impaired condition when Child was

in his custody have no bearing upon and are not related to mandating supervised visitation by applying the provisions of section 452.400.2(2). They relate only to establishing and supporting the endangerment-impairment standard required by section 452.400.1(1). When considered in the context of these additional findings, the trial court's references to section 452.400.2(2) are used only to buttress the trial court's conclusion as to the seriousness of its finding that Father had in fact raped and sodomized the minor girl. That finding was supported by substantial evidence, including, most notably, Father's tape-recorded admission, regardless of whether Father pleaded guilty or was found guilty of violating a criminal statute. It is clear from the totality of the findings in the judgment that the trial court concluded that Father's inappropriate sexual conduct, Father's lack of supervision of Child in an extremely dangerous river environment, and Father's repeated impairment while Child was in his custody were so serious they dictated the trial court's endangerment-impairment finding under section 452.400.1(1) supporting supervised visitation. The trial court did not apply section 452.400.2(2) as mandating supervised visitation in the first instance and, thus, could not erroneously misapply it as Father contends. Father's first point is denied.

*Admissibility of Evidence Claim Regarding the Sexual Encounter Was Not Preserved*

■ In his second point, Father contends that "[t]he trial court erred by allowing [Mother] to introduce evidence of the alleged sexual intercourse between [Father] and the minor girl because such evidence was not admissible in that evidence of pending criminal charges and abuse of another child is not relevant for custody

purposes." Father did not, however, preserve this issue for our review.

Father filed a motion *in limine* seeking to bar Mother from introducing any evidence regarding his sexual encounter with the minor girl. The motion court overruled his motion. During the trial, Father's counsel objected to various questions and responses pertaining to his having had sex with the minor girl; however, Father did not object to all questions and responses pertaining to that subject. The minor girl was called to testify and in response to the question, "[Father] had sexual intercourse with you?" she answered, without objection, "yes." Likewise, in answer to the question, "Did he also have oral sex with you?" she responded, without objection, "yes."

█ Ordinarily, whether particular evidence is admissible in a child custody modification case lies within the sound discretion of the trial court, and such decisions will not be disturbed by this Court absent an abuse of that discretion. *Bohrn v. Klick*, 276 S.W.3d 863, 865 (Mo.App. 2009). However, in order to preserve an issue for review on appeal, a party must object at the time of the alleged error at trial; "furthermore, the party must object on the particular grounds he or she wishes to argue on appeal." *Catroppa v. Metal Bldg. Supply, Inc.*, 267 S.W.3d 812, 816 (Mo.App.2008) (citing *Robinson v. Empiregas, Inc. of Hartville*, 906 S.W.2d 829, 836 (Mo.App.1995)). This is because this Court will not "convict a lower court of error on an issue that was not put before it to decide." *Smith v. Shaw*, 159 S.W.3d 830, 835 (Mo. banc 2005). Additionally, "[s]uch objection must be made with sufficient specificity to inform the trial court why the evidence must be excluded." *Catroppa*, 267 S.W.3d at 816 (citing *Carter v. St. John's Reg'l Med. Ctr.*, 88 S.W.3d 1, 18–19 (Mo.App.2002)). "In applying the

'specificity' rule, Missouri appellate courts have ruled that general objections such as 'lacks a foundation,' 'irrelevant,' 'calls for speculation,' 'is self serving,' and the like, are not sufficiently specific objections." *Carter*, 88 S.W.3d at 19.

Here, not only did Father not object to each mention of his encounter with the minor girl, but each objection he did make was a general objection, such as "I want to object to being relevant[,]" or "Judge, same objection. Relevance." Not one of Father's objections contains the required specificity so as to meaningfully inform the trial court of the alleged impropriety of the proffered evidence.

█ In both a footnote to his appellant's brief and in his reply brief, Father states that "counsel asked for a continuing objection on any questions related to the alleged sexual encounter between [Father] and [the minor girl]."

The request for a continuing objection ... signifies the mutual understanding between defense counsel, opposing counsel and the trial court that ... counsel intends to keep his objection alive throughout the trial. When a [party] requests a continuing objection the trial court is afforded an opportunity to determine and consider the exact nature and scope of the requested objection and the inherent problems associated with such an objection.... The request also gives the [opposing party] an opportunity to address to the trial court any prejudice it believes it may suffer as a result of allowing the [requesting party] to preserve an objection to evidence while at the same time appearing to the jury to have "no objection" to such evidence. *See [State v.] Baker*, 103 S.W.3d [711,] 717 [ (Mo. banc 2003) ]. After hearing from both parties the trial court can then, in the exercise of its discretion, either grant or deny the continuing ob-

jection. If granted, the trial court then has the opportunity to give the parties explicit directions as to the exact nature and scope of the objection.

*State v. McWhorter*, 240 S.W.3d 761, 763–64 (Mo.App.2007). No mention of such a request can be found by this Court in either Father's motion *in limine* or in the trial record. During trial Father did state, "Judge, if I can show my objection continuing along these lines of questions, I'll object to the relevance again, Your Honor." Such a statement does not, however, comport with the procedure delineated *supra* regarding the institution of a continuing objection: there was no express ruling by the trial court as to a continuing objection, Mother was not given an opportunity to weigh in, and neither the trial court nor Father outlined "the exact nature and scope" of Father's alleged requested continuing objection. Contrary to Father's position, there was no continuing objection in effect as to the contents of his motion *in limine.*

In the absence of an objection with the requisite specificity to each admission of the challenged evidence or a proper continuing objection with such specificity, Father failed to preserve this issue for our review.[1] Father's second point is denied.

### *Judgment is Supported by Substantial Evidence and is Not Against the Weight of the Evidence*

In his third point, Father alleges that

[t]he trial court erred in modifying the legal and physical custody arrangements provided for by the original child custody order because the judgment was not supported by substantial evidence in

that [Mother] failed in her burden of establishing a substantial and continuing change of circumstances since the prior custody award and also failed to establish that a change of custody would serve the best interests of the parties' minor child.

This point relied on is in violation of Rule 84.04(d)(1)(C). Rule 84.04(d) states:

(1) Where the appellate court reviews the decision of a trial court, each point shall:

(A) identify the trial court ruling or action that the appellant challenges;

(B) state concisely the legal reasons for the appellant's claim of reversible error; and

(C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of error.

Compliance with Rule 84.04 is "mandatory in order to ensure that appellate courts do not become advocates by speculating on facts and on arguments that have not been made." *Brown v. Ameristar Casino Kansas City, Inc.,* 211 S.W.3d 145, 147 (Mo. App.2007) (internal quotation omitted). Father's third point omits the final requirement of the rule, thus depriving this Court of the specific contextual reasons why Father claims the trial court was in error, and is therefore denied. *See Shochet v. Allen,* 987 S.W.2d 516, 518 (Mo. App.1999).

Father's fourth point is similarly deficient. Father contends that

[t]he trial court erred in modifying the physical custody arrangements provided for by in [sic] the original custody order by awarding [Mother] the sole physical custody of the child and restricting [Fa-

---

**4.** If we reached the issue and considered Father's arguments, we would reject them. Admission of direct evidence of Father's activities that distracted him from properly supervising his two-year old son, whom he abandoned in a dangerous river environment, was not an abuse of discretion by the trial court.

ther] to supervised visitation with his child because the judgment was not supported by substantial evidence and was against the weight of the evidence in that [Mother] failed in her burden of establishing that periods of unsupervised visitation by [Father] with their child would endanger the child's physical health or would impair his emotional development.

Once again, Father fails to "explain in summary fashion why, in the context of the case, those legal reasons support the claim of error." Rule 84.04(d)(1)(C). Accordingly, Father's fourth point is likewise denied. *Shochet*, 987 S.W.2d at 518.

■ Because this appeal involves the welfare of a child, however, we have gratuitously reviewed the record as related to these last two points. The trial court's judgment as challenged in these points is supported by substantial evidence, is not against the weight of the evidence, and is affirmed without further discussion in accordance with Rule 84.16(b)(1).

### *Decision*

The trial court's judgment is affirmed.

SCOTT, C.J., and RAHMEYER, J., concur.