

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| VICTORIA L. FRAWLEY, | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD82442 |
| | ) | |
| MATTHEW J. FRAWLEY, | ) | FILED: February 11, 2020 |
| Appellant. | ) | |

**Appeal from the Circuit Court of Platte County
The Honorable W. Ann Hansbrough, Judge**

**Before Division Three: Alok Ahuja, P.J., and
Anthony Rex Gabbert and Thomas N. Chapman, JJ.**

In 2013, the Circuit Court of Platte County entered a judgment dissolving the marriage of Matthew J. Frawley ("Father") and Victoria L. Frawley ("Mother"). The dissolution decree awarded Mother sole legal and sole physical custody of the couple's two children, and ordered Father to pay $505 per month in child support.

Father filed a motion to modify the child custody and child support provisions of the decree. Mother filed a counter-motion seeking to increase Father's child support obligation, and a motion to hold Father in contempt for failing to satisfy his existing support obligations. After a bench trial the circuit court declined to modify the existing custody arrangement, but altered the visitation provisions of the original decree. The circuit court increased Father's child support obligation to $554 per month. The circuit court held Father in contempt for failing to pay his share of the children's previously incurred extracurricular and unreimbursed medical expenses. It also awarded Mother $10,000 in attorney's fees, and ordered Father to pay two-thirds of the fees of the Guardian *ad Litem*.

Father appeals, asserting nine Points. We reject eight of his claims. We find, however, that the circuit court erred in calculating Father's modified child support obligation, by failing to give him credit for another child over whom he has primary physical custody. We accordingly reverse the child support provisions of the modification judgment, and remand for further proceedings concerning Mother's motion to modify child support. In all other respects, the judgment is affirmed.

## Background

Father and Mother were married in 2008. They have two children together, both boys, who are currently 8 and 10 years old.

On March 7, 2013, the Circuit Court of Platte County entered a judgment dissolving the parties' marriage. The dissolution decree awarded Mother sole legal and sole physical custody of the couple's two sons. The court did so in consideration of Father's "psychological problems and [his] refusal to address said problems properly through therapy and/or medication." The decree granted Mother discretion to allow Father "either unsupervised or supervised visitation" "in light of Father's psychological difficulties," at "all reasonable times and places" as Mother determined.[1] The circuit court also ordered Father to pay $505 per month in child support, and ordered that the parties equally share health care costs for the children that were not otherwise covered by Mother's medical insurance, and the costs of the children's extracurricular activities.

---

[1] We question the validity of the parenting plan in the circuit court's original dissolution judgment, given its vagueness concerning Father's visitation rights, and the virtually unfettered discretion given to Mother to grant or withhold visitation. *See, e.g., Clark v. Clark*, 568 S.W.3d 920, 923 (Mo. App. S.D. 2019) (reversing provisions of dissolution decree which delegated authority to a third party to determine when and how mother could exercise visitation); *Kamler v. Kamler*, 213 S.W.3d 185, 188–89 (Mo. App. E.D. 2007) (reversing dissolution decree which granted father supervised visitation only "at such times approved by the mother," on the grounds that it was "vague and unenforceable," and in violation of § 452.400.1(1), RSMo, which required "an order specifically detailing the visitation rights of the parent without physical custody rights"). Father did not appeal the original dissolution decree, however, and the validity of its visitation provisions is not presently before us.

On June 10, 2016, Father filed a motion to modify the child custody and child support provisions of the original decree. He argued that, in light of a substantial and continuing change of circumstances since entry of the original decree, the court should order that Mother and Father exercise joint legal and joint physical custody of their children. He also argued that, as a result of this changed custody arrangement, his child support obligation should be modified and reduced.

On July 1, 2016, Mother filed a counter-motion to modify Father's child support obligation, arguing that his support obligation should be increased because Father has "obtained a full-time job and is making significantly more money" than at the time of the original decree. On the same day, Mother also filed a motion asking the court to order that Father undergo a psychological and physical examination.

At Mother's request, the circuit court appointed a Guardian *ad Litem* to represent the interests of the children. The circuit court also ordered that Father undergo a psychological and parenting examination with Dr. Aileen P. Utley.

On December 29, 2016, Mother filed an amended motion to modify, which added an allegation that Father had "not fulfilled his child support obligation" under the existing dissolution decree. Mother filed a motion to hold Father in contempt based on the same contentions in January 2017.

On August 3, 2017, the court granted Father's second attorney's motion to withdraw, over Father's objection. From that point forward, Father (who is himself a lawyer) proceeded *pro se*. Father has also represented himself in this appeal.

The circuit court heard evidence on the parties' respective motions to modify and for contempt on six days between December 2017 and November 2018. The court entered its final modification judgment on January 3, 2019. The modification judgment found that:

Since the date of the Judgment and Decree for Dissolution of Marriage, there have been changed circumstances so substantial and continuing as to make the terms of said Judgment and Decree for Dissolution of Marriage unreasonable in regard to child support, custody and Parenting Time. The continuing and substantial changed circumstances included but are not limited to the following:

a. [Father] has relocated his residence from the Kansas City Metropolitan Area to Jefferson City, Missouri;

b. [Father] has engaged in a course of behavior which would endanger the children's physical health or impair their emotional development if [Father] engages in unsupervised contact with the children, to wit:

i. [Father] uses a medication which two qualified medical professionals have stated causes increased psychosis in [Father];

ii. [Father] fails to have insight on his own mental health condition and fails to follow proper treatment protocol; and

iii. [Father] fails to share his prior medical records with his current treating medical professional resulting in his symptoms not being properly managed.

c. [Father] has engaged in [a] course of behavior during this litigation that shows a lack of stability in his mental health including but not limited to erratic filing of motions during the course of trial, [and] threats both direct and indirect against this Court, Counsel for [Mother], and the Guardian ad Litem.

d. [Father] has obtained new employment and as a result that the application of the Missouri Child Support Guidelines and criteria set forth in Supreme Court Rule 88.01 would result in a change of the existing child support in an amount of 20 percent or more.

The modification judgment continued to give Mother sole legal and sole physical custody of the children. As opposed to the original decree which gave Mother sole discretion over Father's visitation rights, however, the modification judgment specified that Father would have solely supervised visitation, based on the court's conclusion that "Unsupervised Parenting Time with [Father] would endanger the children's physical health or impair their emotional development." The parenting plan incorporated into the modification judgment detailed when and where Father

4

was entitled to exercise his parenting time, including weekly visitation and a holiday schedule.

The circuit court also modified Father's child support obligation, increasing it to $554 per month. The court found Father in contempt for failing to pay $6,352.03 as his share of the children's past extracurricular and uninsured medical expenses, and ordered him to purge this contempt by paying an additional $200 per month until the arrearage was satisfied. The circuit court awarded the Guardian *ad Litem* $10,959.62 in fees, and ordered Father to pay two-thirds of those fees, or $7,306.34. The court also awarded Mother $10,000 in attorney's fees.

Father appeals, raising nine claims of error.[2]

## Standard of Review

On review of a modification judgment, as with any other court-tried case, we must "affirm the circuit court's judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Querry v. Querry*, 382 S.W.3d 922, 925–26 (Mo. App. W.D. 2012) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. 1976)). "We accept all reasonable inferences and evidence favorable to the [modification] order and disregard all contrary inferences." *Kunce v. Kunce*, 459 S.W.3d 443, 446 (Mo. App. W.D. 2015) (citation and internal quotation marks omitted). We also defer to the circuit court's credibility judgments, since "[t]he trial court may believe or disbelieve all, part, or

---

[2] Mother filed a motion to dismiss Father's appeal based on his failure to comply with the procedural requirements of Rule 84.04 in his amended appellant's brief. *Pro se* parties are subject to the same procedural rules as represented litigants. *Johnson v. Mo. Dep't of Corrs.*, 534 S.W.3d 869, 871 (Mo. App. W.D. 2017). While compliance with Rule 84.04 is mandatory, *Franklin v. Ventura*, 32 S.W.3d 801, 803 (Mo. App. W.D. 2000), dismissing an appeal for failing to comply with Rule 84.04 is within this Court's discretion. *State v.* McDaniel, 236 S.W.3d 127, 132 (Mo. App. S.D. 2007). We prefer wherever possible to dispose of a case on the merits. *Morris v. Wallach*, 440 S.W.3d 571, 575 n.4 (Mo. App. E.D. 2014). Although Father's brief is procedurally deficient in some respects, we are able to discern his arguments, and will address those arguments on the merits. Mother's motion to dismiss is denied.

5

none of the testimony of any witnesses." *Id.* (citation and internal quotation marks omitted).

## Discussion

### I.

Father's first Point challenges the admission into evidence of exhibits offered by Mother pertaining to his mental health status and treatment. Specifically, Father challenges the admission of Exhibits 2 and 113, which are a business records affidavit, and the associated psychological evaluation report prepared by Dr. Aileen Utley.[3]

Dr. Utley was appointed by the court to conduct a psychological and parenting assessment of Father. Father argues that Exhibits 2 and 113 were improperly admitted for multiple reasons. Among other things, he argues: that Mother failed to comply with the business records affidavit statute, § 490.692, RSMo, because Dr. Utley's report was not attached to the business records affidavit Mother served on him; that Dr. Utley's report does not qualify as a business record subject to the statute; that Dr. Utley was not qualified to render the opinions described in the report; and that Dr. Utley's report constitutes impermissible expert testimony concerning Father's credibility.

---

[3] Father also asserts error as to the admission of Exhibits 110 and 112, which are a compilation of Father's mental health records from Tri-County Mental Health Services, Inc., under the care of Dr. Parimal Purohit; and ten pages of handwritten notes by Dr. Samuelson, who also provided Father with mental health services. At trial, Father stated he did not "have any objection with the Purowit [*sic*] records," and he therefore failed to preserve any claim of error as to Exhibit 110. At trial, Father's only objections to Exhibit 112 were that it was not complete, and that it was inadmissible in this modification proceeding because it concerned Father's mental health prior to entry of the original dissolution decree. Father did not preserve in the circuit court his current claim: that Exhibits 110 and 112 were "not served on Father until the third day of trial." The argument concerning belated disclosure of these exhibits was also not included in Father's Point Relied On, and is therefore not properly before us for that reason as well. *Curl v. BNSF Ry. Co.*, 526 S.W.3d 215, 228 n.1 (Mo. App. W.D. 2017).

6

What is notably absent from Father's briefing, however, is any developed argument that he was prejudiced by the admission of Dr. Utley's report. We do not reverse circuit court judgments based merely on the existence of an erroneous ruling; instead, Rule 84.13(b) specifies that "[n]o appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant *materially affecting the merits of the action*." (Emphasis added.) Consistent with this general principle, caselaw holds that "the erroneous admission of evidence in a court-tried case is not grounds for reversal as long as there is substantial admissible evidence in the record to support the judgment." *C.S. v. Mo. Dep't of Soc. Servs.*, 491 S.W.3d 636, 646 (Mo. App. W.D. 2016) (citation and internal quotation marks omitted). "Missouri Courts have described this standard as being 'practically impossible' to meet." *S.M.S. v. J.B.S.*, 588 S.W.3d 473, 509 (Mo. App. E.D. 2019) (citations omitted).[4]

Father does not argue that the circuit court's modification judgment is unsupported by substantial evidence if Dr. Utley's report is disregarded. Nor could he plausibly make such an argument. The circuit court may order supervised visitation where it finds that unsupervised visitation "would endanger the child's physical health or impair his or her emotional development." § 452.400.1, RSMo; *see also, e.g.*, *Baker v. Gonzalez*, 315 S.W.3d 427, 433 (Mo. App. S.D. 2010) (holding that "[t]his 'endangerment-impairment standard' applies to an order for supervised

---

[4] *See also, e.g.*, *Andrews v. Andrews*, 452 S.W.3d 150, 154 (Mo. App. W.D. 2015) (finding no basis for reversal of circuit court judgment refusing to authorize mother's relocation with children, even assuming guardian *ad litem*'s report was erroneously admitted, where "the record is replete with sufficient competent evidence to support the court's judgment"); *Rathbun v. CATO Corp.*, 93 S.W.3d 771, 785 (Mo. App. S.D. 2002) ("[T]he erroneous admission of evidence is 'scarcely ever' grounds for reversal in a court-tried case," "except where it appears from the record that the court relied on the evidence and that no other competent evidence supports the judgment."); *Love v. Love*, 72 S.W.3d 167, 173–74 (Mo. App. S.D. 2002) (finding no basis for reversal of child custody provisions of dissolution decree, even assuming that admission of guardian *ad litem*'s report was erroneous, because "the custody provision of the decree is [otherwise] supported by substantial evidence").

visitation." (citing *Buschardt v. Jones*, 998 S.W.2d 791, 799 (Mo. App. W.D. 1999)). Under § 452.400.2, this standard must be satisfied in a modification judgment, where a modified parenting plan "restrict[s] or limit[s] one party's visitation rights compared to their visitation rights under the original [judgment]." *Turley v. Turley*, 5 S.W.3d 162, 165 (Mo. 1999). In this case, although the original dissolution decree authorized Mother to require Father's visitation to be supervised, the circuit court only *mandated* supervised visitation in the modification judgment. We therefore assume for purposes of this opinion that the evidence was required to satisfy the endangerment-impairment standard.

Substantial evidence – separate and apart from Dr. Utley's report – supports the circuit court's finding that unsupervised visitation with Father would endanger the children's physical health, or impair their emotional development. In justifying supervised visitation in this case, the modification judgment refers to the circuit court's own observation of Father's behavior in the course of this litigation. The judgment finds that Father's "erratic filing of motions" and direct and indirect threats against the court, opposing counsel, and the Guardian *ad Litem* "shows a lack of stability in his mental health." The judgment also refers to Father's "hostile and disagreeable attitudes" while being questioned during trial.

The modification judgment also cites Father's erratic, aggressive or troubling behavior in his interactions with Mother, her fiancé, and the children, including: sporadic exercise of visitation; refusing to return the children to Mother after his visitation time had ended; unilaterally enrolling the children in a parochial school, even though Mother had been awarded sole legal custody; conflict and expressions of anger towards Mother's fiancé as he interacted with the children, including "one occasion [when Father] went into a rage and insisted that the fiancé move when one of the boys was on his lap"; a "road rage" incident with the children in Father's car;

and Father "demeaning [Mother], bullying her and name-calling" during Father and Mother's communications.

Finally, the circuit court had substantial evidence concerning Father's mental health condition and treatment, separate and apart from Dr. Utley's report. This evidence included medical records of Father's treatment by multiple other mental health professionals, and Father's and Mother's testimony. Father in his testimony acknowledged that he was taking a medication for Attention Deficit Hyperactivity Disorder ("ADHD") which two of his previous physicians had advised him not to take because it increased his psychotic symptoms (although Father contended that he was now taking a delayed- rather than immediate-release form of the medication). Father also admitted in his testimony that his current treating psychiatrist had not had access to all of the treatment records from his care by an earlier psychiatrist.

The record here contains substantial other evidence – separate and apart from Dr. Utley's report – that supports the trial court's judgment that unsupervised visitation would endanger the children's physical health or emotional development. Therefore, the admission of Dr. Utley's report – even if erroneous – would not justify reversal. Point I is denied.

**II.**

In his second and third Points, Father argues that the trial court erred in excluding an audio recording he made of one of the children's baseball games, and in refusing to permit Father to make an offer of proof as to the content of the recording.

On the second day of trial, Father offered the audio recording into evidence. He testified that he made the recording "specifically because [Mother] at this time has been saying lie after lie after lie which my testimony already establishes. So I wanted proof, if she makes any allegations whatsoever, that I did not do anything

9

inappropriate." In offering the audio recording, Father initially testified that he started the audio recording on his iPhone 5 smartphone when he arrived at the baseball field; that he stopped the recording when the game ended; that he transferred the recording (by e-mail) from his smartphone to his desktop computer; and that he transferred copies of the recording from his computer onto three compact discs (which he had provided to opposing counsel, the Guardian *ad Litem*, and to the court). Father contended that the recording was probative to establish that Mother had belittled him at the game, had withheld visitation with the children from him, and had alienated the children's affections. He also contended that the recording would disprove Mother's claims that he had upset the children at the game, and had acted aggressively toward Mother's fiancé.

Mother's counsel objected on the basis that "there's no way to tell the veracity of this recording[,] . . . [or] if certain things were removed or added," and that the recording was over an hour long and would occupy considerable trial time to play. Father then repeated that he started the recording when he arrived at the game and stopped it when he was leaving, and that "[t]his document has not been edited whatsoever." When the circuit court informed Father that it did not believe an adequate foundation had been laid for the recording, he added to his prior testimony that his smartphone, computer and compact discs were continuously in his custody and control at all relevant times, and that "[t]he video [*sic*] recording has not been altered in any form." Again, the court expressed concern that "there is an element of the foundation that [Father] ha[s] not established," and sustained Mother's foundation objection.

After a short recess, the circuit court permitted Father an additional opportunity to lay a proper foundation for the recording. Father "renew[ed] everything" he had said previously, and added that "the phone was working in all aspects prior to the time in which I made the recording," that the "speakers on the

audio" were Mother, Father, and the two minor children, and finally that "the device was properly working."  Mother's counsel again objected, and the trial court sustained the objection and excluded the recording.

On the next day of trial, after hearing several preliminary motions, Father sought permission from the court to make an offer of proof concerning the contents of the audio recording.  After hearing objections from Mother's counsel and the Guardian *ad Litem*, the circuit court ruled that it would not accept as an offer of proof anything beyond what Father had previously stated when attempting to introduce the audio recording into evidence.

We review the trial court's decision to exclude the audio recording for an abuse of discretion.  *NorthStar Educ. Fin., Inc. v. Scroggie*, 581 S.W.3d 641, 644 (Mo. App. W.D. 2019).  "An evidentiary ruling is an abuse of discretion only if it is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration."  *Menschik v. Heartland Reg'l Med. Ctr.*, 531 S.W.3d 551, 557 (Mo. App. W.D. 2017) (citation and internal quotation marks omitted).

In *State v. McFadden*, 369 S.W.3d 727 (Mo. 2012), the Missouri Supreme Court explained that, to

> [e]stablish[ ] a proper foundation for the admission of a tape-recorded conversation, one must demonstrate:
>
> > (1) the device was capable of recording accurately; (2) the operator of the recording device was competent to operate it; (3) the recording is authentic and correct; (4) changes, additions and deletions have not been made to the recording; (5) the recording has been preserved in an acceptable manner; (6) the speakers are identified; and (7) the conversation was voluntary and without inducement.

*Id.* at 752 (quoting *State v. Fletcher*, 948 S.W.2d 436, 439 (Mo. App. W.D. 1997) (citing *State v. Wahby*, 775 S.W.2d 147, 153 (Mo. banc 1989))).

11

Although Father's testimony may have established several of the required foundational elements for admission of an audio recording, he never offered testimony as to one critical, and central, issue: whether "the recording [was] authentic and correct." Father testified to *the manner* in which the recording was made, and to the chain of custody of the recording from his smartphone to the compact discs on which the recording was now housed. He never testified, however, that he had listened to the recording, or that the recording in fact fairly and accurately depicted the events at his children's baseball game. Father's failure to explicitly testify that the recording was accurate is particularly glaring given the objection from Mother's counsel as to "the veracity of this recording." While the circuit court gave Father multiple opportunities to supply the missing foundational element, he failed to do so. In these circumstances, we cannot find that the circuit court abused its discretion in excluding the recording. Given this fundamental, foundational defect in Father's proffer, we need not address his separate claim that the circuit court erred by refusing to permit him to make an offer of proof concerning the recording's contents.[5]

Points II and III are denied.

## III.

In his fourth Point, Father argues – on multiple grounds – that the circuit court erred in finding him to be in contempt of the dissolution decree, for failing to satisfy his obligation to reimburse Mother for 50% of the children's extracurricular and unreimbursed medical expenses.

The modification judgment states:

---

[5] While we need not decide the offer of proof issue, we emphasize that even if the circuit court is firmly persuaded that proffered evidence is inadmissible, it should permit an offer of proof except in unusual circumstances "to preserve for the appellate courts' review a record of what evidence was offered but rejected." *State ex rel. Praxair, Inc. v. Mo. Pub. Serv. Comm'n*, 344 S.W.3d 178, 185–86 (Mo. 2011).

12

> [Father] is found to be in contempt of the Judgment and Decree of Dissolution of Marriage for willfully and maliciously failing to reimburse [Mother] for uninsured medical expenses and extracurricular expenses in the amount of $6,352.03. [Father] shall purge himself of this contempt by mailing a payment of $200.00 per month, post-marked on or before on the 15th day of each month, beginning January 15, 2019, to [Mother] until the amount in full has been paid. Failure by [Father] to make said payments to [Mother] could result in incarceration in the Platte County Detention Center until such time as he purges himself of this contempt.

Thus, the modification judgment finds that Father failed to satisfy his support obligations under the original dissolution decree, and threatens him with potential future incarceration if he fails to purge his contempt in the manner specified. The judgment does not, however, actually order Father's incarceration. For this reason, his appeal of the contempt finding is premature.

Civil contempt orders are appealable only when they become final. *In re Marriage of Crow & Gilmore*, 103 S.W.3d 778, 780 (Mo. 2003). "For purposes of appeal, a civil contempt order is not final until [it is] enforced." *Id.* at 781 (citations and internal quotation marks omitted; collecting cases). Civil contempt orders are enforced in two ways. If the remedy is by a fine, a civil contempt order is enforced "when the moving party executes on the fine." *Id.* Alternatively, if the remedy for contempt is imprisonment, the contempt order is enforced at the time a court issues an order of commitment based on the contempt, or when the contemnor is actually imprisoned. *Id.* at 781–82; *see also Carothers v. Carothers*, 337 S.W.3d 21, 25 (Mo. 2011). In *Crow*, the Supreme Court held that "the contempt order was not enforced" and was therefore not appealable, where – as here – "[b]y the words of the 'judgment,' incarceration was conditioned on Husband's failure to purge the contempt within 60 days. If he failed, the court could impose incarceration by issuing an order of commitment." 103 S.W.3d at 782; *accord In re Marriage of Kimball*, 583 S.W.3d 450, 454–55 (Mo. App. S.D. 2019); *Navarro v. Navarro*, 504 S.W.3d 167, 174 (Mo. App. W.D. 2016); *Davis v. Davis*, 475 S.W.3d 177, 183 (Mo.

13

App. W.D. 2015) (dismissing appeal of contempt ruling where "although the contempt judgment contained a *threat* of incarceration, no warrant of commitment to jail was ever entered").

At the time this appeal was filed, the circuit court had found Father in contempt, but had not enforced the contempt order by issuing an order of commitment or actually incarcerating Father. Father's arguments in this appeal concerning the validity of the contempt finding are premature, and we do not consider them.

**IV.**

In his fifth Point, Father argues that the circuit court erred in calculating his modified child support obligation. Specifically, Father argues that, in calculating the presumed child support amount which Father was then ordered to pay, the court failed to provide Father with credits (against his gross income): (1) for a child born to Father and his current wife after the original dissolution decree, whom he supports, and who primarily resides with him; (2) for health insurance which Father purchased on behalf of the children; and (3) for overnight visitation Father has exercised with the children.

At trial, both parties submitted their own Form 14s for the circuit court to review. The trial court rejected the parties' Form 14s, and instead prepared its own. Using its Form 14, the circuit court calculated a presumed child support amount of $554 per month. The court used this calculated amount to increase Father's child support obligation from $505 per month (as specified in the original dissolution decree) to $554 per month.

"When determining the amount of child support to be paid, the application of Rule 88.01 and Form 14 is mandatory." *Monnig v. Monnig*, 53 S.W.3d 241, 248 (Mo. App. W.D. 2001) (citation and internal quotation marks omitted). "Courts are permitted to either adopt a Form 14 of the parties or create their own." *M.L.R. v.*

*Jones*, 437 S.W.3d 404, 406 (Mo. App. S.D. 2014) (citation omitted). In either case, the Form 14 "amount must be calculated in conformity with the Supreme Court's directions for its use." *Monnig*, 53 S.W.3d at 248 (citation omitted). On appeal, we review "the correctness of the presumed child support amount . . . to ensure that not only is it done accurately from a mathematical standpoint, but that the various items and their amounts were properly included in the calculation and supported by substantial evidence." *Rackers v. Rackers*, 500 S.W.3d 328, 334–35 (Mo. App. W.D. 2016) (citation and internal quotation marks omitted).

## A.

Father first argues that the circuit court erred by failing to give him a credit under Line 2(c) of Form 14 for another child he supports. Father argues he is entitled to a credit for a daughter born to Father and his current wife in July 2018, after the initial dissolution decree. Mother responds that, because Father is "the moving party" in this modification proceeding, he is not entitled to a Line 2(c) adjustment. We agree with Father that the circuit court erred in failing to award him a credit on Line 2(c) for his new child.

Line 2(c) provides an adjustment to a parent's monthly gross income, by reducing the parent's gross income on account of the parent's "[m]onthly support obligation for other children." "In Line 2(c), Form 14 'provides for an adjustment to the gross income for other children who are not part of the current proceeding for which a party has primary physical custody.'" *M.L.R.*, 437 S.W.3d at 407 (citations omitted).

The comment for Line 2(c) explains when a credit for support for other children is warranted. It states:

> (1) *In any action to <u>decrease</u> child support*, a parent obligated to pay support shall not be entitled to a line 2(c) credit for children born to or adopted by the parent obligated to pay support after the entry of the current order. However, the parent obligated to pay

15

support will be allowed a line 2(c) credit for children that have remained primarily residing with the parent obligated to pay support from prior to the existing order.

> (2) *In any action to <u>increase</u> child support*, a parent obligated to pay support shall be entitled to a line 2(c) credit for children born to or adopted by the parent obligated to pay support after the entry of the current order. However, the use of the credit alone cannot act to reduce the current support amount in the action in question.

(Emphasis added.)[6]

Thus, under the official comments to Line 2(c) of Form 14, Father would be entitled to a credit against his gross monthly income for his support obligation for children born or adopted after the initial dissolution decree, "[i]n any action to *increase* child support." Such a credit would <u>not</u> be available, however, "[i]n any action to *decrease* child support." Mother argues that, because "Father was a moving party in this action [he is] not entitled to credit for his after-born child." We disagree.

There is no question that Father initiated these proceedings by filing a motion to modify "Child Custody and Custody Time." In his motion, Father asked for a "review of child support," and a reduction in his support obligation, as a result of the altered custody arrangement he proposed. In addition to opposing Father's motion, Mother filed her own motion to modify child support, seeking an *increase* in Father's child support obligation due to changed circumstances, including Father's new employment.

---

[6] The current comment to Line 2(c), which has been in effect since January 1, 2014, is worded differently than the earlier comment. The earlier comment denied a Line 2(c) credit for later-born and later-adopted children to "the moving party," "in an action to increase <u>or decrease</u> the support payable under an existing order." Cases decided under the earlier comment held that a paying parent who had moved to modify his or her child support was not entitled to a Line 2(c) credit for later-born children, <u>even if</u> the circuit court denied the paying parent's motion to modify, and instead granted the recipient parent's cross-motion. *See, e.g.*, *Cross v. Cross*, 318 S.W.3d 187, 195–96 (Mo. App. W.D. 2010). Because the current comment does not deny credit to any parent who is a "moving party," and allows the credit in "any action to increase child support," cases decided under the earlier version of this comment are no longer relevant to the issue we address.

16

The comment to Line 2(c) does not define the phrase "any action to increase [or to decrease] child support." We conclude, however, that the phrase must be read to refer to each separate motion to modify child support which a circuit court addresses. The intent of the comment to Line 2(c), and the limitation it places on the availability of a credit, seems clear: a parent may not seek to _reduce_ their child support obligation for existing children, by invoking their newly incurred obligation to support later-born or later-adopted children; on the other hand, a parent's pre-existing child support obligation cannot be _increased_ without taking account of any additional support obligations the parent has since incurred.

It is a common occurrence that parents file cross-motions to modify child support, with the paying parent seeking a _reduction_ in their support obligation, while the recipient parent seeks an _increase_. We do not believe the availability of the Line 2(c) credit should depend on which motion was filed first. Instead, the comment to Line 2(c) makes clear that a paying parent cannot rely on a new child to seek to reduce their pre-existing support obligations, but that the recipient parent cannot seek an increase in child support while ignoring the fact that the paying parent now has additional support obligations. Where a parent files a motion to increase the other parent's child support obligation – whether as an original motion or as a counter-motion – the paying parent is entitled to a Line 2(c) credit for children born or adopted after the original child support order.

Here, the circuit court denied Father's motion to modify the child custody arrangement, and his associated motion to reduce his child support accordingly. Based on Father's new employment, the circuit court instead granted _Mother's_ motion to modify, which sought to _increase_ Father's support obligation. Because Mother's motion was an "action to increase child support," the circuit court was required to give Father a Line 2(c) credit for his support obligation to his new child.

17

Accordingly, we reverse the trial court's upward modification of Father's child support obligation, and remand with instructions that the court recalculate Father's presumed child support including a Line 2(c) adjustment for Father's other child, and such further proceedings as may be required on Mother's motion to modify.

**B.**

Father next argues the trial court erred in its calculation of his presumed child support amount, because it "refus[ed] to give Father a credit [on Line 6(c) of Form 14] . . . for the pro rata cost of purchasing health insurance on behalf of the minor children."

Line 6(c) provides a credit for "[h]ealth insurance costs for the children who are subjects of this proceeding." In *Harris v. Parman*, 54 S.W.3d 679 (Mo. App. S.D. 2001), the Southern District held that it was error for a circuit court to allow a parent a credit on Line 6(c) for the cost of health insurance, when the other parent had been ordered by the court to provide health insurance for the parties' children. *Id.* at 690.

In this case, the original dissolution decree provided that "Mother shall carry medical insurance for the minor children." Similarly, the modification judgment specified that "Mother shall continue to provide medical insurance for the minor children," "either through her employer or that of her fiancé." The circuit court noted that Father "may provide additional health insurance coverage for the minor children at issue in this case, but he is not ordered by this Court to do so and as such, will not receive a credit on the Form 14 for any health insurance expense."

Because Father had no obligation under the original dissolution decree or under the modification judgment to provide health insurance coverage for the children, the circuit court did not abuse its discretion in refusing to give him a credit on Line 6(c) for the cost of any health insurance coverage he chose to purchase.

18

## C.

Finally, Father asserts the circuit court erroneously failed to give him credit for overnight stays that the children had with him.

Line 11 on Form 14 provides an "[a]djustment for a portion of amounts expended by the parent obligated to pay support during periods of overnight visitation or custody." "This adjustment is based on the number of periods of overnight visitation or custody per year awarded to and exercised by the parent obligated to pay support under any order or judgment." Form 14, Comment to Line 11; *see also Conrad v. Conrad*, 76 S.W.3d 305, 310 (Mo. App. W.D. 2002) (the overnight visitation adjustment is "limited to 'court-ordered' [overnight] visitation"). Here, the circuit court did not grant Father any period of overnight visitation or custody, either in the original dissolution decree, or in the modification judgment. Father is accordingly not entitled to any credit on Line 11 for overnight visitation.

## V.

Next, Father argues the circuit court erred in ordering Father to pay a portion of the Guardian *ad Litem*'s fees because, according to Father, the Guardian *ad Litem* should have been removed for failure to perform her duties.

Under § 452.423.5, RSMo, "[t]he guardian ad litem shall be awarded a reasonable fee for such services to be set by the court." § 452.423.5. The circuit court has the discretion to fix reasonable compensation for a guardian *ad litem*'s representation, and we review a judgment ordering the payment of guardian *ad litem* fees only for an abuse of that discretion. *S.I.E. v. J.M.*, 199 S.W.3d 808, 822 (Mo. App. S.D. 2006).

The circuit court found that the Guardian *ad Litem* "has performed good and valuable legal services to protect the best interests of the minor children," and awarded $10,959.62 in fees as "fair and reasonable" compensation. The court

19

ordered Father to pay 2/3 of the Guardian ad Litem's fees ($7,306.34) and Mother to pay the remaining 1/3 (or $3,653.28).

Father does not challenge the *amount* of fees the circuit court awarded to the Guardian *ad Litem*. Instead, he argues that the Guardian *ad Litem* should not have been awarded *any* fee, because the Guardian *ad Litem* should have been removed for deficient performance.

Under § 452.423.4, RSMo, the circuit court *must* remove a guardian ad litem that fails to "faithfully discharge such guardian ad litem's duties." Ultimately, "[r]emoval of a guardian ad litem is a matter vested in the sound discretion of the appointing court." *Guier v. Guier*, 918 S.W.2d 940, 950 (Mo. App. W.D. 1996) (citation omitted).

The circuit court did not abuse its discretion in refusing to remove the Guardian *ad Litem* in this case. The record shows that the Guardian *ad Litem* conducted a thorough and independent review of all the records and evidence in this case, communicated with both Mother and Father in person and through e-mail, and visited the minor children on multiple occasions. While Father suggests additional actions the Guardian *ad Litem* could have taken, the Guardian *ad Litem*'s failure to take these additional actions does not rise to the level of dereliction of duty that would justify this Court in finding that the circuit court abused its considerable discretion in leaving the Guardian *ad Litem* in place. Further, while Father may disagree with the opinions and recommendations expressed by the Guardian *ad Litem*,

> [t]he guardian's principal allegiance is to the court and h[er] function is to advocate what [s]he believes to be the best interests of the children. Obviously, this will likely be contrary to the position taken by one of the parents, in this case the Father. Father's complaints boil down to the fact that he was upset because the guardian did not necessarily agree with Father's positions. The trial court did not err in refusing to remove the guardian based on Father's allegations of bias and prejudice.

*Guier*, 918 S.W.2d at 950 (citation omitted).

## VI.

In his seventh Point, Father argues the trial court abused its discretion in awarding Mother $10,000 in attorney's fees. Father argues the trial court abused its discretion in awarding Mother these attorney's fees because the court "failed to consider and/or properly weigh[ ] the statutory factors (i.e., [Mother]'s financial ability to pay, Father's attempt to avoid litigation, and Mother's misconduct [at trial])."

Generally, "parties to a domestic relations case are responsible for paying their own attorney's fees." *Alberswerth v. Alberswerth*, 184 S.W.3d 81, 93 (Mo. App. W.D. 2006) (citation omitted). However, trial courts have "considerable discretion" to award attorney's fees under § 452.355, RSMo, but if the court chooses to do so, it "must comply with section 452.355." *Id.* (citations omitted). In other words, the trial court must consider "all relevant factors, including the financial resources of both parties." *Id.* (citation omitted); *see Barancik v. Meade*, 106 S.W.3d 582, 594 (Mo. App. W.D. 2003) ("A court is always required to consider the financial resources of both parties before deciding a request for attorney fees." (citation omitted)). In addition to the parties' financial resources, the trial court should consider "the merits of the case and the actions of the parties during the pendency of the action." § 452.355.1. "When all relevant factors are considered . . . the trial court's decision is within its discretion." *Cohen v. Cohen*, 178 S.W.3d 656, 674 (Mo. App. W.D. 2005). Finally, there is no one-size-fits-all analysis under the relevant factors: "The relevant factors will balance differently in each case." *Alberswerth*, 184 S.W.3d at 94.[7]

---

[7] The circuit court also found that Father had failed to pay his court-ordered child support "in bad faith." Under § 452.355.2,

> [i]n any proceeding in which the failure to pay child support pursuant to a . . . . final judgment is an issue, if the court finds that the obligor has failed,

In the modification judgment, the circuit court found that:

 [Father], through his actions to prolong and complicate this matter along with his actions taken in bad faith including his failure to pay the ordered child support amount, caused [Mother] to incur attorney fees in the amount of $20,250.00, an amount in excess of that which would be reasonably incurred by [Mother] in this matter.

The court ordered Father to pay $10,000 of Mother's fees, slightly less than half of the fees it found she had incurred.  Elsewhere in the court's judgment, it discussed the parties' relative salaries in connection with the modification of child support, and Father makes no argument that he is financially unable to pay the attorney's fees the circuit court ordered.  Additionally, the court considered Father's actions throughout the course of these proceedings which the court personally observed to have prolonged and complicated these proceedings – findings Father does not challenge on appeal.  In his brief, Father merely asserts additional facts that would potentially militate in his favor (such as his attempt to mediate before trial; and the alleged misconduct of Mother's counsel during the litigation).  However, our function on appeal is not to reweigh the relative merit or culpability of each party's conduct during the litigation.  There plainly were circumstances in this case which would justify the circuit court in concluding that an award of $10,000 in attorney's fees to Mother was warranted.

**VII.**

Father argues in his eighth Point that the judge erred in failing to recuse herself.

Under § 508.090.1(1), a judge "may be disqualified in any civil suit" if "the judge is interested or prejudiced."  The Code of Judicial Conduct requires recusal:

without good cause, to comply with such order or decree to pay the child support, the court shall order the obligor, if requested and for good cause shown, to pay a reasonable amount for the cost of the suit to the obligee, including reasonable sums for legal services.

22

in any proceeding in which the judge's impartiality might reasonably be questioned, [including] where the judge has a personal bias or prejudice concerning a party or knowledge of facts that are in dispute.

*Anderson v. State*, 402 S.W.3d 86, 91 (Mo. 2013) (quoting Rule 2-2.11(A)(1)). "[A] disqualifying bias or prejudice is one that has an extrajudicial source and results in an opinion on the merits on some basis other than what the judge learned from the judge's participation in a case." *Id.* (quoting *Smulls v. State*, 10 S.W.3d 497, 499 (Mo. 2000)); *see Martin v. State*, 526 S.W.3d 169, 184 (Mo. App. W.D. 2017) ("'Prejudice' pursuant to section 508.090.1(1) aligns with the duty to recuse pursuant to Rule 2-2.11(A)."). Because disqualifying bias must arise from an extrajudicial source, "the mere fact that a ruling is made against a party does not show bias or prejudice on the part of the judge." *Gordon on Behalf of G.J.E.*, 504 S.W.3d 836, 847 (Mo. App. W.D. 2016) (citation and internal quotation marks omitted). We "presume[] that a judge acts with honesty and integrity and will not preside over a hearing in which the judge cannot be impartial." *Anderson*, 402 S.W.3d at 92 (citation omitted).

Father's arguments for recusal are based on adverse rulings made by the court during trial. Thus, Father argues that the circuit court exhibited bias: by denying his motions to exclude Dr. Utley's report; by excluding "an exhibit email (which Mother objected to)"; by excluding "Father's material evidence (Exhibits BB [the audio recording], JJ)"; and by "sustaining Mother's objection to Father's testimony that Mother's fiancé[] stated, 'you're not the boss of me' in the presence of the children, which materially contradicted Mother's hearsay testimony." Even if these rulings were erroneous, they do not establish a disqualifying bias or prejudice from an extrajudicial source which would require the court's recusal.

We also reject Father's argument that the circuit court exhibited a disqualifying bias or prejudice by "frequently threatening Father with attorney fees if Father sought mediation, sought to secure visitation, sought to prepare for trial,

23

and/or create a record for appeal." The record reflects that, on the occasions cited by Father, the court merely reminded him that Mother was incurring attorney's fees as a result of his various litigation tactics, and that the court had the authority to award attorney's fees in its final judgment. Based on the record before us, we find no abuse of discretion in the court's refusal to recuse itself.

## VIII.

Father's ninth and final Point argues that the circuit court erred in finding that its modified visitation schedule was in the best interests of the children.[8]

Under § 452.400, a court may modify an order granting visitation rights (1) "whenever modification would serve the best interests of the child[ren]," and, where the court is restricting a parent's visitation, (2) "it finds that the visitation would endanger the child[ren]'s physical health or impair [their] emotional development." § 452.400.2(1).

To the extent Father challenges the circuit court's endangerment/impairment finding necessary to impose supervised visitation, we discussed the substantial support in the record for this finding in § I above. We do not repeat that discussion here.

"In matters pertaining to visitation rights, we defer to the circuit court's assessment of the children's best interests." *Stirling v. Maxwell*, 45 S.W.3d 914, 915 (Mo. App. W.D. 2001) (citation omitted). On appellate review, "[w]e will affirm the judgment unless it is not supported by substantial evidence, is against the weight of the evidence, or the circuit court misstates or misapplies the law." *Id.* (citation

---

[8] In the same Point Relied On, Father argues the trial court "errored [*sic*] in finding a substantial and continuing change that makes a change in custody necessary . . . ." But the court did not order a modification of the existing custody arrangement based on a substantial and continuing change of circumstances. The court instead only modified the existing visitation schedule. Such a modification does not require the court to find a "substantial and continuing change of circumstances." *Russell v. Russell*, 210 S.W.3d 191, 196 (Mo. 2007); *Welcome v. Welcome*, 497 S.W.3d 842, 846 (Mo. App. W.D. 2016).

24

omitted). We will not reweigh the evidence before the circuit court, or decide the best interests issue anew. *Librach v. Librach*, 575 S.W.3d 300, 312 (Mo. App. E.D. 2019).

In its judgment modifying Father's visitation rights, the trial court made explicit and detailed factual findings on each of the eight "relevant factors" to determine the best interests of the children under § 452.375.2, RSMo. On appeal, Father challenges the court's factual findings under only four of the eight statutory factors. Even as to the factors Father challenges, he takes issue only with certain of the circuit court's specific factual findings, or cites to additional evidence which – he contends – mitigates or counter-balances the circumstances on which the circuit court relied.

Father's ninth Point essentially invites this Court to retry the "best interests" issue, and reweigh the evidence the circuit court has already carefully considered. We decline Father's invitation. We find no abuse of discretion in the circuit court's conclusion that the parenting plan it ordered was in the best interest of the parties' children.

## Conclusion

We reverse the circuit court's imposition of a modified child support obligation of $554 per month on Father. We remand to the circuit court for further proceedings on Mother's motion to modify the child support award, consistent with this opinion. In particular, in calculating Father's presumed child support amount in connection with Mother's motion to modify, the circuit court must give Father a credit on Line 2(c) of Form 14, to reflect Father's support obligation for his new daughter. In all other respects, the circuit court's judgment is affirmed.[9]

---

[9] Father filed a Motion for Criminal Contempt and Stay of Execution of Judgment, in which he asked this Court to "Cite and Punish Jennifer Fain, Guardian Ad Litem, and Stephanie Schutt, Respondent's counsel for Criminal Contempt of Court, and stay the execution of the underlying judgments on the basis of criminal contempt." The

_____
Alok Ahuja, Judge

All concur.

---

basis of Father's motion is his contention that the Guardian *ad Litem* and Mother's counsel "knowingly suborned perjured statements [from Mother's testimony] and knowingly offered false evidence" in submitting Dr. Utley's report because Mother lied to Dr. Utley. Despite Father's conclusory allegations, he has presented no evidence that the Guardian *ad Litem* or Mother's counsel knowingly permitted false testimony to be introduced. Father's motion to hold the Guardian *ad Litem* and Mother's counsel in criminal contempt is denied.